# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**JERMAINE LAKEITH HUNT**

                                                    **PLAINTIFF**

**VS.**                          **CIVIL ACTION NO. 1:09cv131-HSO-JMR**

**DAVID ALLISON, SHERIFF**                                  **DEFENDANT**

---

## REPORT AND RECOMMENDATION:

This matter is before the Court pursuant to a Motion [34-1] for Summary Judgment filed on behalf of the Plaintiff, Jermaine Hunt; a Motion [46-1] to Dismiss, or in the Alternative for Summary Judgement and Qualified Immunity filed on behalf of the Defendant, Sheriff David Allison; a Motion [50-1] for Joinder filed on behalf of the Plaintiff; and a Motion [58-1] to Strike Affidavit filed on behalf of Defendant Allison.  Defendant Allison's Motion [46-1] to Dismiss, or in the Alternative for Summary Judgement and Qualified Immunity is accompanied by a Memorandum [47-1] in Support thereof.   Plaintiff filed a Response [49-1] in Opposition to Defendant Allison's dispositive motion, to which Defendant Allison filed a Reply [54-1].   Defendant Allison filed a Response [42-1] in Opposition to Plaintiff's Motion for Summary Judgment.  Also, Defendant Allison filed a Response [57-1] in opposition to Plaintiff's Motion for Joinder.  Plaintiff has not filed a response in opposition to Defendant Allison's Motion to Strike Affidavit.  The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that Defendant Allison's Motion to Strike Affidavit be granted; Plaintiff's Motion for Joinder be denied; Defendant Allison's Motion to Dismiss or in the Alternative for Summary Judgement and Qualified Immunity be granted; and Plaintiff's Motion for Summary Judgment be denied and all claims against Defendant Allison be dismissed with prejudice.

## FACTS:

Plaintiff, Jermaine Hunt, pled guilty to one count of possession of cocaine with intent to distribute on September 22, 2004, and was sentenced on February 25, 2005. *See U.S.A. v. Hunt*, 1:04-cr-00152-WS-B-1 (S.D. Ala. 2005). Hunt was incarcerated at the Pearl River County Jail ("PRCJ") between May 28, 2008 and March 6, 2009, due to a hold by the U.S. Marshal Service. (Ex. "A" Attach. [51-1] Def.'s Mot. 28.) On January 22, 2009, Plaintiff, filed this *pro se* § 1983 action against Sheriff David Allison, and alleges that he suffered violations of his civil rights while incarcerated at the PRCJ.

In his Complaint, Plaintiff contends that he was subjected to unconstitutional conditions of confinement, denied adequate medical treatment and subjected to mental abuse during his detention at the PRCJ. Specifically, Plaintiff alleges that the telephones are broken or barely working, that he is only allowed outside occasionally, that his mail is mishandled, that he has no communication with legal counsel, that molded walls are painted over, that there is standing water in the shower and leaking toilets, that he does not receive his religious diet, that the food is served cold and the drinking water is not clean, that there is no cleaning on weekends, no ventilation and that the living conditions are unsanitary. Also, Plaintiff alleges that there was "improper medical care or no care at all" and that he was subjected to mental abuse by correctional officers. (*See* Pl.'s Compl. [1-1].)

## STANDARD OF REVIEW:

In considering a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). The issue is not whether the plaintiff will prevail but whether the plaintiff is entitled to pursue his complaint and offer evidence in support of his claims. *Doe v. Hillsboro Indep. Sch. Dist.,* 81 F.3d 1395, 1401 (5th Cir. 1996). Motions to dismiss are

disfavored and are rarely granted. *Beanal v. Freeport-McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir. 1999). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 164 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). "However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'"*Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 420-421 (5th Cir. 2006)(quoting 3 CHARLES ALAN WRIGHT & ARTHUR R.MILLER, FEDERAL PRACTICE AND PROCEDURE: Civ. 2d § 1216 at 156-159 (footnote omitted)). The Court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

Ordinarily, the Court may not look beyond the pleadings in ruling on a 12(b)(6) motion. *Baker*, 75 F.3d at 196. However, in evaluating a motion which challenges the adequacy of a complaint under 12(b)(6) in a prisoner's *pro se* suit, this Court must look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King,* 707 F.2d 215, 220 (5th Cir.1983). Furthermore, the Fifth Circuit has stated:

> [I]t is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly *pro se* complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.... *Pro se* prisoner complaints must be read in a liberal fashion and should not be dismissed unless it appears beyond all doubt that the prisoner could prove no set of facts under which he would be entitled to relief.

*Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989)(quoting *Taylor v. Gibson*, 529 F.2d 709, 713-714 (5th Cir. 1976)).

To survive a motion to dismiss, plaintiffs are required to plead "enough facts to state a claim

to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculation level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Recently, the Supreme Court clarified that review of a 12(b)(6) motion is guided by two principles: one, a court must apply the presumption of truthfulness only to factual matters, and not to legal conclusions; and two, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*

## APPLICABLE LAW:

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985). It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of

constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish

that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## ANALYSIS:

In his memorandum brief, Defendant Allison asserts that Plaintiff has failed to exhaust his administrative remedies, and therefore his section 1983 claims should be procedurally barred under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). (Def.'s Mem. [47-1] Br. 12.)

Plaintiff's Complaint was filed pursuant to 42 U.S.C. § 1983, and is thereby subject to the Prison Litigation Reform Act ("PLRA"), which provides in pertinent part, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). The PLRA requires the plaintiff "to exhaust 'available' 'remedies,' whatever they may be. The failure to do so prevents him from pursuing a federal lawsuit at this time." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "In *Booth v. Churner*, the Supreme Court decided that Congress intended a

prisoner to invoke 'such administrative remedies as are available' in the prison, without regard to whether the grievance procedure affords money damage relief, before he may file suit contesting prison conditions in federal court." *Wright*, 260 F.3d at 358 (citation omitted). The Supreme Court's finding was further summed up in a footnote: " Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative sources." *Booth v. Churner*, 532 U.S. 731, 741, n. 6. (2001). The district court is not required to determine if the petitioner made a good faith effort to pursue his administrative remedies. *Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998)(overruled on other grounds).

Defendant Allison notes that Plaintiff has never filed an inmate grievance regarding any of the claims of constitutional violations stated in his Complaint. Defendant Allison points to Plaintiff's inmate file which is devoid of any such grievance. (*See* Ex. "A" Attach. [51-1] Def.'s Mot.) Plaintiff's inmate file only contains a request that money be sent to his grandmother and a request to have his toenails and fingernails clipped. (Ex. "A" Attach. [51-1] Def.'s Mot. 24-25, 77.) Also, the Court notes that Plaintiff admits in his Complaint that he did not complete any administrative remedy program regarding the claims raised. (Pl.'s Compl. [1-1] 3.)

Upon a thorough review of the record and the pleadings before the Court, the Court finds that Plaintiff has failed to avail himself of the available administrative remedies provided by the PRCJ. Therefore, this Court finds that the instant 42 U.S.C. § 1983 claim should be dismissed for petitioner's failure to meet the PLRA's administrative remedies exhaustion requirement.

Although Plaintiff's failure to exhaust available administrative remedies is dispositive as to his section 1983 claims, the Court will, out of an abundance of caution, proceed to review Plaintiff's

substantive claims against Defendant Allison in both his official and individual capacities.[1]

## I.  Dismissal Pursuant to FED.R.CIV.P. 12(b)(6):

Unlike cases in which prisoners await trial, plaintiffs that have been convicted of crimes are not able to pursue claims regarding their conditions of confinement under the Fourteenth Amendment's Due Process Clause.  Instead, their claims are grounded in the Eighth Amendment's prohibition of cruel and unusual punishments, and an analysis of such claims must consider whether a defendant displayed both objective and subjective deliberate indifference.  Thus, the burden of conditions of confinement claims by a convicted prisoner is higher than pretrial detainees.

The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993).  The Eighth Amendment imposes duties on prison officials, and require that they provide humane conditions on confinement, including adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832.  Prison officials must also "take reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  "It is cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Helling*, 509 U.S. at 33.

A prison condition constitutes an Eighth Amendment violation only when two requirements are met.  First, there is an objective requirement that the alleged condition be so serious as to deprive

---

[1]The Court notes that Plaintiff does not specify whether his claims are against Defendant Allison in his individual capacity, his official capacity, or both.  Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Allison in both his individual and official capacity.  *See Williams v. Love,*  2006 WL 1581908, *5 (S.D.Tex. 2006).

the prisoner of the "minimal civilized measure of life's necessities," such as some basic need. Second, the prison official must have been deliberately indifferent to the inmate's health or safety. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (footnote omitted). The United States Supreme Court defined the deliberate indifference standard as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Accordingly, a prison official's failure to eliminate a substantial risk of harm which he *should have* perceived, but in fact *did not* perceive, cannot support an imposition of liability under the Eighth Amendment. *Id.* at 838. To establish a constitutional violation, a plaintiff must show that prison or jail officials were subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir. 1996) (en banc).

Hunt Alleges that he was subjected to unconstitutional conditions of confinement while he was incarcerated within the PRCJ. Specifically, Hunt contends that the telephones are broken or barely working, that he is only allowed outside occasionally, that his mail is mishandled, that he has no communication with legal counsel, that molded walls are painted over, that there is standing water in the shower and leaking toilets, that he does not receive his religious diet, that the food is served cold and the drinking water is not clean, that there is no cleaning on weekends, and that the living conditions are unsanitary. (*See* Pl.'s Compl. [1-1].) However, besides the above allegations concerning the conditions of his incarceration, Hunt fails to allege the existence of any policy or custom which violated his constitutional rights in his Complaint. In Hunt's summary judgment

motion, which reads more like a discovery motion, he states that "[the] court is clearly aware of other actions filed against this Defendant, who Plaintiff submits has a 'custom, policy and practice' of the deprivation of one or more identifiable human needs..." (Pl.'s Mot. [34-1] Summ. J. 3.) However, Plaintiff does not identify these alleged other actions, nor does he offer any facts or evidence in support of this broad conclusory allegation. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated incidents of negligent conduct, which, by themselves, are insufficient to state an official capacity claim against Defendant Allison pursuant to § 1983.

Furthermore, after reviewing Plaintiff's Complaint and pleadings, the Court finds that Plaintiff has failed to state an individual capacity claim against Defendant Allison pursuant to § 1983. To prove an Eighth Amendment violation, Plaintiff must show deliberate indifference. To prove deliberate indifference, Plaintiff is required to demonstrate that officials both knew of and disregarded an excessive risk to Plaintiff's health or safety. *See Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). "Deliberate indifference is an extremely high standard to meet." *Id.* at 756. In order to survive a motion to dismiss, a complaint must contain allegations pertaining to every material point necessary to sustain a recovery. *Rios*, 444 F.3d at 420-21. Plaintiff's pleadings, even if accepted as true, fail to allege that Defendant Allison was even aware of Plaintiff's confinement conditions, much less that Defendant Allison consciously disregarded an excessive risk to Plaintiff's health or safety. Further, Plaintiff fails to allege that Defendant Allison in any way participated in or contributed to the conditions of Plaintiff's confinement. Absent such an allegation, Plaintiff's Complaint fails to state an individual capacity claim against Defendant Allison pursuant to section 1983. *See Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002);

*see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

Plaintiff also alleges that he was denied adequate medical care while incarcerated at the PRCJ. (*See* Pl.'s Compl. [1-1].)  The Court notes that the denial of medical treatment is properly classified as an episodic act or omission.  Therefore, in order to establish a constitutional violation, Plaintiff must allege that Defendant Allison acted with deliberate indifference to Plaintiff's constitutional rights. *See Gibbs*, 254 F.3d at 548.  To prove deliberate indifference, Plaintiff must indicate that Defendant Allison knew of and disregarded an excessive risk to Plaintiff's health or safety. *See Stewart*, 174 F.3d at 534.

As previously stated, Plaintiff alleges that he was provided "improper medical care or no care at all." (Pl.'s Compl. [1-1] 4.)  However, Plaintiff does not elaborate on his claim any further.  In response to an Order from this Court seeking additional information on his claim, Plaintiff stated that "Tylenol and IB profen [sic] doesn't [sic] cure everything" and "by the time nurses come toothache, headache, [or] injury gone." (Pl.'s Resp. [20-1] 1.)  Besides these allegations, Plaintiff fails to allege, with sufficient facts, that Defendant Allison implemented a custom or policy which violated his constitutional rights.  The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation.  At best, Plaintiff's Complaint alleges that Defendant Allison is vicariously liable for the actions of his subordinates, which is insufficient to establish an official capacity claim pursuant to § 1983.  Therefore, the Court finds that Plaintiff's Complaint fails to state an official capacity claim against Defendant Allison for allegedly denying him medical treatment while incarcerated at the PRCJ.

Additionally, the Court finds that Plaintiff's Complaint does not allege that Defendant

Allison acted with deliberate indifference to Plaintiff's medical needs. First, Plaintiff fails to even allege that he suffered from an injury or ailment that required medical treatment. Second, in both his Complaint and Response to this Court's Order, Plaintiff fails to allege that Defendant Allison was either aware of an injury or that Plaintiff had requested medical treatment. Therefore, Plaintiff has not alleged sufficient facts to permit an inference that Defendant Allison was subjectively aware of a risk to Plaintiff's health. The Court finds that, absent an allegation of Defendant's personal involvement, Plaintiff's Complaint fails to state an individual capacity claim for denial of medical treatment. *See Thompkins*, 828 F.2d at 304.

Although this Court finds that Plaintiff's pleadings do not include allegations of any personal involvement by Defendant Allison, nor do they attribute the alleged constitutional violations to a policy or custom implemented by Defendant Allison, the Court will, out of an abundance of caution, analyze Plaintiff's claims under the summary judgment portion of Plaintiff's and Defendant Allison's dispositive motions.

## II. Summary Judgment Motions:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

Before beginning an analysis of Plaintiff's claims, this Court must address Defendant Allison's Motion [58-1] to Strike. Plaintiff filed this *pro se* § 1983 action against Defendant Allison on January 22, 2009. On April 21, 2010, Plaintiff filed a Motion [34-1] for Summary Judgment and attached as an exhibit was a "power of attorney agreement," in which Lester Jon Ruston, a prisoner incarcerated with Plaintiff in Missouri who does not purport to be an attorney, claims that he is assisting Plaintiff in the present action and acting on his behalf. (*See* Ex. "1" Attach. Pl.'s Mot. [34-2] Summ. J.) On May 18, 2010, Defendant Allison filed a Motion [56-1] to Dismiss, or in the Alternative for Summary Judgment and Qualified Immunity. Plaintiff filed a Response in Opposition to Defendant Allison's motion on June 1, 2010, and on June 21, 2010, Plaintiff filed an "Affidavit of Lester Jon Ruston." (*See* Aff. [56-1].) In this affidavit, Mr. Ruston cites several cases

that he has filed and he claims to be an expert on public integrity investigations and investigating attorney fraud. *Id.* Mr. Ruston claims to be acting as Plaintiff's legal assistant in the present case. The affidavit contains allegations the Defendant Allison has not provided discovery to Plaintiff and that Defendant Allison's counsel has willfully concealed evidence. *Id.* The remainder of the affidavit contains discussion about Mr. Ruston's various cases in other courts and allegations that Mr. Ruston is wrongfully incarcerated. *Id.* The affidavit does not contain any facts or evidence about the conditions at the PRCJ while Plaintiff was incarcerated at the jail. Defendant Allison seeks to strike the affidavit on the grounds that it does not meet the requirements of Federal Rule of Civil Procedure 56 or the requirements of 28 U.S.C. § 1746. (*See* Def.'s Mot. [58-1].) Plaintiff has not filed a response in opposition.

Affidavits must be made on personal knowledge, setting forth "such facts as would be admissible in evidence." FED. R. CIV. P. 56(e). "Setting forth mere statements of conclusions of law or ultimate fact are insufficient to support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985). Title 28 Section 1746 of the United States Code states:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

(Signature)".

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

28 U.S.C. § 1746.

"It is a settled rule in [the Fifth] circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment." *Roth v.* Morgan, 160 Fed. Appx. 409, 410 (5th Cir. 2005) (citing *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)). "A statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'" *Kline*, 845 F.2d at 1306. Unsworn documents are not appropriate for consideration in a summary judgment motion. *Martin v. John W. Sone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); *See also Watts v. Kroger Co.*, 170 F.3d 505, 508 (5th Cir. 1999) (finding that statements that were signed, but were not sworn, notarized, or in the form of affidavits and did not comply with federal requirements for unsworn declarations were not competent summary judgment evidence.) Defendant Allison argues that the unsworn statement of Lester Jon Ruston, submitted by Plaintiff, does not meet the requirement of 28 U.S.C. § 1746. The unsworn statement states "I, Lester Jon Ruston, being over the age of 18 and ruled competent in multiple courts nationwide, do depose and state the following, under penalty of perjury, pursuant to federal law(s) 28 U.S.C. § 1746 and 18 U.S.C. § 1621." (*See* Aff. [56-1].) While Ruston's statement notes that his statements are made under the penalty of perjury, he does not verify that they are true and correct. *Id.* Instead of using the quoted language contained in 28 U.S.C. § 1746, Ruston merely cites this court to the statute without verifying that his statements are true and correct. Thus, Ruston's

unsworn statement is not in substantial conformity with either formula because, as drafted, it allows the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods. Ruston never declared his statements to be true and correct; therefore, his affidavit must be disregarded as summary judgment proof.

Even assuming for the sake of argument that the affidavit complies with the law, the affidavit still does not contain any relevant, material facts pertaining to the pending summary judgment motion and fails to create a genuine issue of material fact. Ruston's affidavit does not contain any facts pertaining to the conditions at the PRCJ during Plaintiff's incarceration, let alone any relevant facts that would be admissible in evidence. (*See* Aff. [56-1].) Ruston claims to be assisting Plaintiff in the instant action pursuant to an agreement between them. (*See* Ex. "1" Attach. Pl.'s Mot. [34-2] Summ. J.) In the affidavit, Ruston claims to be a legal advisor to Plaintiff and he makes a broad allegation concerning discovery, particularly that Defendant Allison has not provided Plaintiff with discovery and that Defendant Allison's counsel has concealed evidence and should be sanctioned. *Id.* However, Ruston presents no facts to support these allegations. The Court notes that the record does not reveal any notices of discovery requests sent by Plaintiff to Defendant Allison, nor has Plaintiff ever filed a motion to compel seeking the Court's assistance in obtaining discovery from Defendant Allison. The rest of Ruston's affidavit discusses his cases pending in other courts and jurisdictions, wholly irrelevant to Plaintiff's claims presently before the Court.[2]

After careful consideration, the Court is of the opinion that Document #56 should be stricken as it fails to conform to the requirements for competent summary judgment evidence under

---

[2]The Court notes that Defendant Allison cited to this Court *Ruston v. Dallas County, TX*, 3:07-cv-1076-D, a case from the United States District Court for the Northern District of Texas, Dallas Division, wherein, that Court found Ruston to be an abusive litigant and noted that between 2001 and 2008 he had filed at least eighty-two (82) prisoner actions nationwide. (*See* Ex. "E" Attach. Def.'s Resp. [55-1].)

FED.R.CIV.P. 56(e) or 28 U.S.C. § 1746. However, even if the Court were to consider Plaintiff's Document #56, the opinions contained herein would remain unchanged. The Court now turns to the merits.

The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). A sentenced inmate may be punished in any fashion that is neither cruel nor unusual. *See Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir. 1981). As stated above, the constitutional rights of a pretrial detainee flow from the due process guarantees of the Fourteenth Amendment. *See Bell*, 441 U.S. at 535. Since the State does punish convicted prisoners, but cannot punish pretrial detainees, a pretrial detainee's due process rights are said to be "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Hare*, 74 F.3d at 639 (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

A. Denial of Access to the Courts:

Plaintiff's Complaint asserts a claim for denial of access to courts against Defendant Allison in both his official and individual capacities. Plaintiff claims that he had "no communication [with] legal counsel or with any legal matters," that the telephones were broken or barely worked, and that his mail was mishandled. (Pl.'s Compl. [1-1] 4.) However, Plaintiff fails to allege the existence of an official policy resulting in the violation of his constitutional rights. Furthermore, Plaintiff fails to allege that his access to any court proceeding was hampered by this alleged lack of communication with legal counsel, broken telephone, or mishandling of mail. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged unconstitutional denial of access to the courts.

To the extent Plaintiff's Complaint asserts a claim for denial of access to the courts against Defendant Allison in his individual capacity, such a claim is subject to the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable. Even if the conduct violates constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).

Plaintiff claims that Defendant Allison unconstitutionally denied him access to the courts. However, Plaintiff has not provided any evidence of actual injury to any case as a result of his alleged lack of communication with legal counsel. In order for a plaintiff to succeed in an access to the courts claim, he must show actual injury, which includes evidence proving that the denial of legal resources hindered his efforts to pursue a non frivolous case. *See Carter v. Lowndes County*, 89 Fed.Appx. 439; 2004 U.S. App. LEXIS 1063 (5th Cir. 2004) (citing *Lewis v. Casey*, 518 U.S. 343, 349-51 (1996)). Plaintiff has not even alleged that his efforts in pursuing any case have been hindered. Thus, the Court does not find that Plaintiff suffered a violation of any clearly established constitutional right. Assuming, *arguendo*, that a violation occurred, the Court still finds that Defendant Allison would be entitled to qualified immunity because there has been no evidence of unreasonable conduct on his behalf. Plaintiff has wholly failed to establish the existence of a constitutional violation or any unreasonable conduct on the part of Defendant Allison. Thus, the Court finds that Defendant Allison is entitled to qualified immunity.

## B. Conditions of Confinement:

As previously stated, the Constitution 'does not mandate comfortable prisons,' but neither

does it permit inhumane ones. *Farmer*, 511 U.S. at 832 (quoting *Rhodes*, 452 U.S. at 349). The Eighth Amendment imposes duties on prison officials, and requires that they provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care. *Id.* A prison condition constitutes an Eighth Amendment violation only when two requirements are met. First, there is an objective requirement that the alleged condition be so serious as to deprive the prisoner of the "minimal civilized measure of life's necessities," such as some basic need. Second, the prison official must have been deliberately indifferent to the inmate's health or safety. *Woods*, 51 F.3d at 581. The United States Supreme Court has held that a prison official cannot be found liable under the Eighth Amendment for an alleged inhumane condition of confinement unless the official knows of and disregards an excessive to inmate health of safety. *Farmer*, 511 U.S. at 837. Accordingly, a prison official's failure to eliminate a substantial risk of harm which he *should have* perceived, but in fact *did not* perceive, cannot support an imposition of liability under the Eighth Amendment. *Id.* at 838.

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement while he was incarcerated within the PRCJ, and that Defendant Allison is officially liable. Plaintiff's official capacity claims against Defendant Allison are, in reality, claims against the office which he occupied at the time of the alleged incidents and, ultimately, Pearl River County. Therefore, to the extent Plaintiff brings this action against Defendant Allison in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability; that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff argues that there is no ventilation, that he is only allowed outside occasionally, that molded walls are painted over, that there is standing water in the shower and leaking toilets, that he does not receive his religious diet, that the food is served cold and the drinking water is not clean, that there is no cleaning on weekends and that the living conditions are unsanitary. (*See* Pl.'s Compl. [1-1].) However, other than the above mentioned allegations of unconstitutional conduct, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights. Further, Plaintiff does not even allege, nor is there any evidence, that he ever notified Defendant Allison or any official about the alleged unconstitutional conditions. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant official capacity claim against Pearl River County. Accordingly, Defendant Allison is entitled to summary judgment on Plaintiff's official capacity claims as they relate to the conditions of the PRCJ.

To the extent that Plaintiff seeks to hold Defendant Allison liable in his individual capacity, the Court finds that Plaintiff has failed to establish that his conditions of confinement at the PRCJ violated his constitutional rights under the Eighth Amendment. Specifically, Plaintiff presents no evidence that Defendant Allison denied him a basic need or was deliberately indifferent to the existence of a substantial risk of harm. First, the conditions of Plaintiff's confinement do not indicate a deprivation of a basic need. Plaintiff contends that the food was served cold, that the water was not clean, and that he did not receive a religious diet. However, Plaintiff does not argue that the food was insufficient, unhealthy, or that it lacked the appropriate caloric value. The available evidence suggests that Plaintiff received three adequate meals a day and fresh drinking

water. (*See* Ex. "D" Attach. Def.'s Mot. [46-5].)  Also, the Fifth Circuit has held that prisons need

not respond to particularized religious dietary requests. *Baranowski v. Hart*, 486 F.3d 112, 122 (5th

Cir. 2007); *see also Lahey v. Jones*, 836 F.2d 948 (5th Cir. 1988); *Udey v. Costner*, 805 F.2d 1218

(5th Cir. 1986) (Court held that the First Amendment did not require a prison to provide an inmate

with a diet consistent with his religious beliefs).  Further, the occasional presence of open and

obvious water on the floor of the prison restroom and the alleged unsanitary condition of the jail do

not rise to the level of a substantial risk to inmate health or safety.  The evidence before the Court

reveals that trash was removed twice daily, seven days a week, and that the PRCJ inmates, including

Plaintiff, were provided with cleaning supplies five times a week. (*See* Ex. "D" Attach. Def.'s Mot.

[46-5].)  Also, when standing water or leaking toilets were reported, the PRCJ staff addressed them

immediately. *Id.*  With respect to his claim that he was only allowed outside occasionally, Plaintiff

has not made a showing that this allegation rises to the level of an Eighth Amendment violation. *See*

*Wilkerson v. Maggie*, 703 F.2d 909, 911-12 (5th Cir. 1983).  Plaintiff has not alleged that he was

deprived of outdoor recreation for a significant period of time or that he suffered any physical injury

as a result of the alleged limitations on outdoor exercise; he cannot recover damages absent such

injury. *See* 42 U.S.C. § 1997e(e); *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008).

Plaintiff has not alleged nor shown that any of the alleged conditions resulted in the denial of "the

minimal civilized measure of life's necessities." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir.

2001).  Plaintiff does not allege anything that resembles a constitutional violation. *See Helling v.*

*McKinney*, 509 U.S. 25, 36, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (holding that the inmate must

show that the risk of which he complains is "so grave that it violates contemporary standards of

decency to expose anyone unwillingly to such a risk").

Furthermore, Plaintiff presents no evidence that Defendant Allison or any official was

subjectively aware that the alleged conditions posed an unreasonable risk of harm to the inmates at the PRCJ. There is no evidence that Plaintiff ever notified Defendant Allison or any PRCJ official about the alleged conditions. (*See* Ex. "A" Attach. [51-1] Def.'s Mot.)

The Court finds that Plaintiff has failed to allege that the conditions of his confinement were sufficiently dangerous as to constitute a serious threat to his health or safety. Further, Plaintiff has failed to establish deliberate indifference on the part of Defendant Allison, because he has not alleged nor shown his actual, *subjective* awareness of the allegedly unconstitutional condition. Thus, Plaintiff's Eighth Amendment claims are legally insufficient to establish liability against Defendant Allison and must be dismissed.

Additionally, the Court notes that Plaintiff's complaint requests injunctive relief in the form of repairs or remedies to the alleged conditions. However, the record indicates that Plaintiff is no longer incarcerated at the PRCJ, thereby rendering his claims moot. *See Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991).

C.  Inadequate Medical Care:

Plaintiff claims that he was not provided proper medical care. Specifically, Plaintiff alleges that he was provided "improper medical care or no care at all." (Pl.'s Compl. [1-1] 4.) However, Plaintiff does not elaborate on his claim any further. In response to an Order from this Court seeking additional information on his claim, Plaintiff stated that "Tylenol and IB profen [sic] doesn't [sic] cure everything" and "by the time nurses come toothache, headache, [or] injury gone." (Pl.'s Resp. [20-1] 1.) However, Plaintiff's inmate file reveals that the only medical request that he submitted was a request seeking to have his toenails and fingernails clipped, and this request was responded to by PRCJ staff. (*See* Ex. "A" Attach. [51-1] Def.'s Mot.)   Regardless, other than the above

mentioned allegations of inadequate medical care, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated incidents of negligent conduct, which, by themselves, are insufficient to support the instant official capacity claims against Defendant Allison.

To the extent Plaintiff's Complaint also seeks liability against Defendant Allison in his individual capacity, Defendant Allison has pled the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert,* 500 U.S. at 231. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs*, 254 F.3d at 548. In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him

incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendant Allison contends, and the Court agrees, that Plaintiff has failed to meet his burden of establishing that Defendant Allison was deliberately indifferent to his serious medical needs. Plaintiff's claim is that he was not receiving adequate medical care. However, after a thorough review of the record, the Court is unable to conclude that Plaintiff has created a genuine issue as to whether Defendant Allison was deliberately indifferent to his serious medical needs. A prison official is not liable for the denial of medical treatment unless the official knows of and disregards an excessive risk to inmate health or safety. *Harris v. Hermann*, 198 F.3d 153, 159 (5th Cir. 1999). In the instant action, there is no evidence indicating that Plaintiff was ever denied any medical request, and certainly no evidence that Defendant Allison was aware that Plaintiff was in need of treatment for a serious medical need. Therefore, Plaintiff has not alleged sufficient facts to permit an inference that Defendant Allison was aware of a serious risk to Plaintiff's health. Furthermore, the evidence of record indicates that Plaintiff's lone sick call request, seeking to have his toenails and fingernails clipped, was responded to by the PRCJ staff. (Ex. "A" Attach. [51-1] Def.'s Mot. 77.) Plaintiff has not demonstrated that any injury he may have sustained was more than *de minimus*. *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997). The available evidence indicates that Plaintiff received medical attention commensurate with his needs. Plaintiff's allegation of improper medical care found in his Complaint is at best a claim of negligence, however, an allegation of malpractice or mere negligence is insufficient to state a claim under section 1983. *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) This issue does not rise to an actionable claim.

Lastly, Plaintiff alleges in his Complaint that he was mentally abused by correctional staff

at the PRCJ. However, Plaintiff has not alleged that he was ever injured by any PRCJ staff. Pursuant to the Prison Litigation Reform Act, "no federal civil action may be brought by a prisoner... for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). If a prisoner cannot provide evidence of a physical injury, the PLRA bars recovery for mental and emotional damages. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). In order to determine whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering, the "injury must be more than *de minimis*, but need not be significant." *Siglar*, 112 F.3d at 193. As noted above, Plaintiff has not presented any evidence that he suffered a physical injury and thus he is barred by the PLRA from seeking psychological damages. Furthermore, the Fifth Circuit has held that freestanding "claims of verbal abuse are not actionable under § 1983." *See Calhoun v. Hargrove*. 312 F.3d 730, 734 (5th Cir. 2002). Accordingly, the Court finds that Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

In the case at hand, the Court finds that Plaintiff has not presented any evidence sufficient to allege a violation of a clearly established constitutional right or any unreasonable conduct on the part of Defendant Allison. Thus, the Court finds that the Defendant Allison is entitled to qualified immunity.

The Court also finds that to the extent Plaintiffs' complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-

9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

## III. Motion for Joinder:

On June 1, 2010, Plaintiff filed a Motion for Joinder for Just Adjudication in conjunction with his Response to Defendant Allison's Motion to Dismiss or in the Alternative for Summary Judgment and Qualified Immunity. (*See* Pl.'s Mot. [50-1].) Plaintiff seeks to "join" the "Pearl River County Board of County Commissioners" as a responsible party pursuant to Rule 19 of the Federal Rules of Civil Procedure. *Id.* at 2. The Court interprets Plaintiff's request for joinder as an attempt to establish liability on the part of Pearl River County for the alleged constitutional violations found in Plaintiff's Complaint. However, as discussed *passim*, this Court has interpreted Plaintiff's Complaint to allege constitutional violations against Defendant Allison in both his individual and official capacities.

Suing a governmental official in his official capacity is another way of pleading against the entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). In other words, "[a]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 171. Accordingly, Plaintiff's claims against Defendant Allison are in effect claims against Pearl River County. *See Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987). Because the Sheriff of Pearl River County in his official capacity, has already been named, allowing Plaintiff to join the Pearl River County Board of Supervisors would be duplicative and redundant.[3] *See Brooks v. George County, Mississippi*, 84 F.3d 157, 165 (5th Cir.)

_____

[3]The Court notes that Plaintiff's attempt to join the Pearl River County Board of Supervisors must be an attempt to bring suit in their official capacity against Pearl River County as there is no evidence that any member of the board participated in any of the alleged activities in any individual

(explaining that a claim against a sheriff named in official capacity is a suit against county), *cert. den'd*, 519 U.S. 948, 117 S. Ct. 359, 136 L. Ed. 2d 251 (1996). Furthermore, the Court notes that beyond a policy or custom which caused an alleged constitutional deprivation, a single decision may create liability for Pearl River County if that decision were made by a final policymaker responsible for that activity. *Monell*, 436 U.S. at 690-91, *see also Brown v. Bryan County, Oklahoma*, 67 F.3d 1174, 1183 (5th Cir. 1995). "Only those officials who have final policymaking authority may render the municipality liable under § 1983." *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). In Mississippi, sheriffs are final policymakers for their respective department's law enforcement decisions made within their counties. *Brooks v. George County, et al.*, 84 F.3d 157, 165 (5th Cir. 1996). Thus, Plaintiff initiated the present action against the appropriate figure to establish liability against Pearl River County, Defendant Sheriff Allison.

Rule 19(a)(1) states that a party must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED.R.CIV.P. 19(a)(1). However, the Court finds that the mandates of Rule 19 are not met in the present case as the Court has interpreted Plaintiff's claims against the Sheriff of Pearl River County, Defendant Allison, as being brought in his official and individual capacities. Therefore, Plaintiff could obtain complete relief against Pearl River County without joining the Pearl River County

---

capacity.

Board of Supervisors.  Accordingly, Plaintiff's motion for joinder should be denied.

## RECOMMENDATION:

The Court notes that Plaintiff is proceeding *pro se*, and has viewed the Complaint and pleadings in a liberal fashion.  After a thorough review of the record, this Court is of the opinion that Plaintiff's pleadings do not include any allegations of deliberate indifference or personal involvement by Defendant Allison, nor do they attribute the alleged constitutional violations to a policy or custom implemented by Defendant Allison.  Furthermore, Plaintiff has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his section 1983 claims.  The Court also concludes that Plaintiff failed to exhaust the available administrative remedies.  Accordingly, based on the foregoing analysis, the Court recommends that Plaintiff's Motion [34-1] for Summary Judgment be denied, Plaintiff's Motion [50-1] for Joinder be denied, Defendant Allison's Motion [58-1] to Strike be granted and Defendant Allison's Motion [46-1] to Dismiss or in the Alternative for Summary Judgment and Qualified Immunity by granted, and Plaintiff's official and individual capacity claims against Defendant Allison be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and

legal conclusions accepted by the District Court.  *Douglass v. United States Auto Ass'n*, 79 F.3d

1415, 1425 (5th Cir. 1996).


                     **SO ORDERED**, this the ___2nd___ day of September, 2010.



                              _____s/ John M. Roper, Sr._____
                              CHIEF UNITED STATES MAGISTRATE JUDGE